In the Matter of the Application of EDWARD J. CLARK and Others, Petitioners, for an Order of Mandamus against JOHN H. DELANEY and Others, Constituting the Board of Transportation of the City of New York, Respondents.

Supreme Court, Special Term, New York County, September 23, 1936.

*Albert De Roode,* for the petitioners.

*Paul Windels, Corporation Counsel* [*Thomas W. A. Crowe* of counsel], for the respondents.

*H. Eliot Kaplan,* for the intervening respondents.

PECORA, J. The petitioners move for an alternative order of mandamus directing the board of transportation of the city of New York to accord to the petitioners all the rights and privileges of " motormen," and to place them upon a parity with other

"motormen" employed by the said board. The motormen (120 in number), in whose favor it is alleged the board of transportation has been discriminating, have intervened in opposition to this application.

Both the petitioners and intervening respondents have held the position of motormen in the competitive classified civil service since January 1, 1935. The gravamen of the petitioners' complaint is that the board of transportation has designated them as "motor switchmen" and has assigned them to duties different from those of the intervening respondents. Furthermore, it is charged that a so-called "seniority" list is maintained by the board of transportation by which is determined the right of selection of runs, vacations and other rights and privileges. This seniority list is predicated upon length of service in railroading and previous experience in road service, and not upon priority of appointment as a motorman under civil service classification. In other words, a motorman's date of "seniority" is established to correspond with the date when he is recognized as having become fully qualified for "road service," as such term is herein defined. The court is asked to correct the alleged discriminatory effect of maintaining such a list.

A motorman is called upon to perform two distinct types of service, namely, road service and yard service. The former includes the operation of a train carrying passengers, while the latter involves the operation of rolling stock without passengers, in a railroad yard, either in the process of the making-up, or of the breaking-up, of trains before or after a "run" in road service. The more experienced motormen are permitted to function in road service, while the less experienced ones serve a probation period in yard service. The petitioners have evidently been assigned to perform "yard service" and have been designated by the board of transportation by the descriptive name of "motor switchmen" to differentiate them from the motormen operating on road service.

The petitioners, in order to prevail, must establish the existence of a clear legal right requiring enforcement by mandamus. (*Matter of Spanhake* v. *Teachers' Retirement Board*, 224 App. Div. 75; affd., 249 N. Y. 605.) This they have failed to do. Section 134½ of the Public Service Law (Laws of 1935, chap. 775) authorizes the board of transportation to "establish and specify the duties and the regulations which shall govern the work and conduct of employees" in the operating division. The board of transportation is thus clothed with full discretion in respect to the operation of the independent city-owned subway. Unless the board has acted in an arbitrary, capricious or unreasonable manner, this court cannot

be called upon to supervise the details of the administration of the independent subway system. It is not the function of an order of mandamus to control discretionary powers of administration unless abuse is clearly manifest.

The board of transportation, with an eye to the safety and convenience of the public, has adopted its own plans and methods in the assignment of the duties of motormen, and to the conditions under which these duties are to be performed. In so acting the board has not been arbitrary and unreasonable, but on the contrary has pursued a course of action found by experience to be effective in railroading throughout the United States. Any interference by the court under such conditions would be unwarranted, if not absurd or foolhardy.

Neither have the petitioners established any violation by the board of transportation of any statute or rule of law. The mere designation of the petitioners as " motor switchmen " has not in any manner changed their civil service classification or status as " motormen." The grade, salaries, duties and classifications for that position remain the same. Seniority in connection with suspensions and reinstatement under section 31 of the Civil Service Law has no relationship to any rules of seniority concerning the assignment and compensation of motormen which the board of transportation may establish for the proper operation of the subway system.

Neither does the fact that different compensations are paid to motormen on road service and to motor switchmen on yard service, affect the situation. There is nothing in the law which prevents the board of transportation from fixing various rates of compensation for different classes of motormen, so long as the compensation paid is within the salary range of the same civil service grade. (*Thoma* v. *City of New York*, 263 N. Y. 402.) The salary differences herein have been based upon a reasonable classification by respondents and have not been made in an arbitrary fashion.

The motion is denied, with fifty dollars costs. Settle order.